**Salih SEVENCAN, Petitioner–Appellant,**

**v.**

**Victor HERBERT, Superintendent, Attica Correctional Facility, Respondent–Appellee.**

**Docket No. 01–2491.**

United States Court of Appeals, Second Circuit.

Argued: June 13, 2002.

Decided: Dec. 30, 2002.

Georgia J. Hinde, New York, NY, for Petitioner–Appellant.

Phyllis Mintz, Leonard Joblove, Sholom J. Twersky, Assistant District Attorneys (Office of the District Attorney, Kings County, Brooklyn, NY), for Respondent–Appellee.

Before MINER, CABRANES, and POOLER, Circuit Judges.

POOLER, Circuit Judge, filed an opinion concurring in the judgment.

JOSÉ A. CABRANES, Circuit Judge:

Salih Sevencan appeals from an Opinion and Order of the District Court for the Eastern District of New York (Allyne R. Ross, *Judge*) entered on August 3, 2001, denying his petition for a writ of habeas corpus. The District Court granted a Certificate of Appealability on the issue of whether the trial court's refusal to except Sevencan's wife from a limited courtroom closure order violated Sevencan's Sixth Amendment rights.

We hold that (1) the requirement set forth in *Yung v. Walker*, 296 F.3d 129, 136 (2d Cir.2002), that a "heightened showing" be made before a state trial court excludes a family member from a criminal trial as part of a limited closure order is satisfied where the record reflects that the state trial court considered the familial relationship at the time the family member was excluded; (2) where the record reflects that the state trial court was aware of the familial relationship, it necessarily includes an implicit or explicit finding that the court considered the familial relationship and found that the reasons justifying the *Waller* closure order extend to excluded family members; and (3) because the state trial court in the instant case clearly considered the familial relationship in determining whether to exempt Sevencan's wife from a properly entered limited closure order, its decision to exclude Sevencan's wife was not "an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States," within the meaning of 28 U.S.C. § 2254(d).

I. BACKGROUND

We assume familiarity with the background facts of this case as set forth in the District Court's opinion, *Sevencan v. Herbert*, 152 F.Supp.2d 252 (E.D.N.Y.2001).

We briefly set forth here only those facts necessary to our disposition.

Between June 3 and September 23, 1993, Sevencan and four co-defendants were tried in the Supreme Court for Kings County, New York, on various charges stemming from their participation in a conspiracy to import heroin from Turkey and sell it in the United States. Among the crimes that the defendants were charged with were weapons possession and conspiracy to commit murder.

The chief witness against Sevencan was an undercover police officer. Before the officer testified, the prosecution moved to seal the courtroom during the officer's testimony. Defense counsel for Sevencan objected. The trial court held a hearing, after which it granted the motion to seal the courtroom during the officer's testimony. In so ruling, the trial judge noted the importance of an open courtroom, but found the need to protect the identity of the undercover officer for his safety compelling, in light of the officer's continuing undercover work. The judge made an exception for attorneys and law student interns working with defense counsel, stating:

> a lawyer is a lawyer, and we'[re] sorry about spectators, family, I mean, another matter, something that [the prosecutor] can't exclude from the courtroom is the two defendants on bail, they're going to walk out, I mean, the family—there's always a certain amount of risk in everything we do and we try to do it.

152 F.Supp.2d at 255 (alterations in original).

Twenty days later, Sevencan's wife attempted to attend the trial. Defense counsel sought an exception to the sealing order at sidebar, which the Court denied as follows:

> [Defense Counsel]: Judge, the defendant's wife is here and works all the time. This is practically the only day she can get here and would like to come in. I understand-
>
> The Court: The courtroom is sealed.
>
> [Defense Counsel]: Yes, it is. That's why I'm applying to you [so that] it be allowed-
>
> The Court: The reason we seal it is to protect the undercover. I don't think she falls within the exceptions I've created. What's the district attorney's position?
>
> [The Prosecutor]: I would object.
>
> The Court: Your application is denied.

*Id.* at 255–56.

After Sevencan was convicted, he argued on appeal, *inter alia,* that closures of the courtroom, including the exclusion of his wife, deprived him of this Sixth Amendment rights. The Appellate Division of the Supreme Court rejected his arguments as follows:

> The defendant contends that he was denied his right to a public trial when the trial court closed the courtroom during the testimony of two undercover police officers. However, his present claim was waived by his failure to object to the closures at trial, and, in any event, is without merit.

*People v. Sevencan,* 258 A.D.2d 485, 685 N.Y.S.2d 735, 736 (2d Dep't 1999) (citing *People v. Akaydin,* 258 A.D.2d 466, 685 N.Y.S.2d 737 (2d Dep't 1999) (companion case)). Notably, although the Appellate Division appeared to hold that Sevencan had not objected to the closures at trial, it did not similarly hold that his co-defendant, Akaydin, had also waived his objection to those closures. *See Akaydin,* 685 N.Y.S.2d at 738. Yet it appears from the record that counsel for Sevencan objected more vocally than counsel for Akaydin.

*Sevencan,* 152 F.Supp.2d at 260. *See generally* N.Y.Crim. Proc. Law § 470.05(2).[1] The New York State Court of Appeals denied leave to appeal further. *See People v. Sevencan,* 93 N.Y.2d 1027, 697 N.Y.S.2d 586, 719 N.E.2d 947 (1999).

Sevencan subsequently timely filed the instant petition in the United States District Court for the Eastern District of New York. He sought relief on various grounds, including the closures of the courtroom and exclusion of his wife. The proceedings subsequently focused on the exclusion of Sevencan's wife.

Inasmuch as the state trial court had made no findings specific to Sevencan's wife, the District Court held a hearing pursuant to *Nieblas v. Smith,* 204 F.3d 29 (2d Cir.1999) (holding that district courts have the discretion to conduct evidentiary hearings to determine whether a courtroom closure was justified where the record of proceedings before the trial court was not sufficient to determine whether the closure was proper). *See* 152 F.Supp.2d at 263–64. Based upon the evidence adduced at the hearing, the District Court held that the closure with respect to Sevencan's wife was justified. *Id.* at 264–68. It then rejected Sevencan's remaining claims, and denied the petition. *Id.* at 269–70. The District Court granted a Certificate of Appealability limited to the issue of whether the exclusion of Sevencan's wife deprived him of his Sixth Amendment rights. *See id.* at 270.

On appeal, Sevencan argues that (1) hearings pursuant to *Nieblas v. Smith* are not appropriate in cases governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and that, accordingly, the writ should have been granted based on the lack of findings by the state trial court; and (2) even if the evidence adduced at the *Nieblas* hearing in the District Court was properly considered, that Court erred in holding that the evidence and record here were sufficient to support the decision to exclude Sevencan's wife from the courtroom.

The State opposes Sevencan's claims, and also argues that, as a preliminary matter, the District Court erred in holding that the Appellate Division's holding that Sevencan "waived" his closure claims was not an independent and adequate state-law ground for the denial of Sevencan's claim. *See generally Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir. 2000) ("Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice.").

We do not reach the issues of the propriety of the *Nieblas* hearing and the alleged independent and adequate state-law ground for the denial of Sevencan's claim because we conclude that the petition should be denied on the basis of the record of the state trial court proceedings. *Cf.*

1. Section 470.05(2) of New York's Criminal Procedure Law provides, in relevant part:

   For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in [response] to a protest by a party, the court expressly decided the question raised on appeal.

*Nieblas,* 204 F.3d at 31 ("Because we ultimately find that the courtroom closure was proper, however, we need not consider these procedural arguments."); *Brown v. Kuhlmann,* 142 F.3d 529, 534 (2d Cir.1998) (similar).

We hold that (1) the requirement we set forth in *Yung v. Walker,* 296 F.3d 129, 136 (2d Cir.2002), that a "heightened showing" be made before a state trial court excludes a family member from a criminal trial as part of a limited closure order is satisfied where the record reflects that the state trial court was aware of the familial relationship; and (2) because the state trial court in this case clearly considered the familial relationship in considering whether to exempt Sevencan's wife from a properly entered limited closure order, the state trial court's decision to exclude Sevencan's wife was not "an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States," within the meaning of 28 U.S.C. § 2254(d).

Accordingly, we affirm the judgment of the District Court.

## II. DISCUSSION

The habeas statute, as amended by AEDPA, provides, in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court authoritatively interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." 529 U.S. at 412, 120 S.Ct. 1495. "[A]s the statutory language makes clear, ... 2254(d)(1) restricts the source of clearly established law to [the Supreme Court's] jurisprudence." *Id.*

In *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the Supreme Court held that, before public access to a courtroom in a criminal case may be restricted, "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the court] must make findings adequate to support the closure." *Id.* at 48, 104 S.Ct. 2210. The violation of the constitutional right to a public trial is a "structural error"[2] warranting remediation regardless of prejudice. *See Id.* at 50 & n. 9, 104 S.Ct. 2210.

In *Vidal v. Williams,* 31 F.3d 67 (2d Cir.1994), we reversed a District Court's denial of a habeas petition on the ground that the closure of a courtroom to a defendant's parents was improper. In that case, the defendant's parents were in the courtroom at the time the prosecutor sought closure, and defense counsel re-

---

**2.** *See Johnson v. United States,* 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ("A 'structural' error, we explained in *Arizona v. Fulminante,* is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' ") (citing *Waller* ).

quested that they be allowed to remain. *Id.* at 68. The state trial court had rejected that request based on the fact that the parents lived within three miles of the area in which the officer conducted undercover operations, and closed the courtroom. *Id.* We held that the proximity of the parents' residence to the officer's area of operation was insufficient to justify their exclusion, relying in part on the Supreme Court's "specific[ ] not[ation of] a special concern for assuring the attendance of family members of the accused" in *In re Oliver,* 333 U.S. 257, 271–72 & n. 29, 68 S.Ct. 499, 92 L.Ed. 682 (1948). *Vidal,* 31 F.3d at 69.

Since *Vidal,* we have often noted in pre-AEDPA or pre-*Williams v. Taylor* cases that particular attention must be paid to the exclusion of family members. *See English v. Artuz,* 164 F.3d 105, 108 (2d Cir. 1998) (granting a habeas petition in a pre-AEDPA case where the prosecutor sought closure of the courtroom, the defendant asked that his family be allowed to remain, and the state trial court denied the defendant's request and closed the courtroom); *Guzman v. Scully,* 80 F.3d 772, 775–76 (2d Cir.1996) (similar, citing *Oliver*); *see also Bowden v. Keane,* 237 F.3d 125, 130 n. 1 (2d Cir.2001) (dicta, "Special concerns may apply when the spectators selectively barred from the courtroom are the defendant's family members." (citing *Vidal*)); *Brown,* 142 F.3d at 538 (similar, citing *Vidal* and *Oliver*); *Ayala v. Speckard,* 131 F.3d 62, 72 (2d Cir.1997) (in banc) (similar, citing *Vidal* and *Guzman*).

In *Yung v. Walker,* 296 F.3d 129, 136 (2d Cir.2002)—the first and only decision of our Court on the exclusion of family members applying the AEDPA standard (as informed by *Williams v. Taylor*)—we recently held that the showing articulated in *Vidal* was not required by "clearly established" Supreme Court law. Because the District Court had relied on *Vidal,* we vacated the judgment and remanded for application of "the more general teachings of *Waller* and *In re Oliver.*" *Id.*

■■■ In the case now before us, the District Court likewise followed *Vidal* and analyzed the issue as if "clearly established" law includes our (Second Circuit) pre-AEDPA jurisprudence regarding the consideration due to family members in such circumstances. *See Sevencan,* 152 F.Supp.2d at 262–63. This was error. As we recognized in *Yung,* no *Supreme Court* decision has ever expressly held that family members must be given special consideration by trial courts deciding whether to close a courtroom, and *Vidal* is not "clearly established" law within the meaning of 28 U.S.C. § 2254(d)(1) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. *See Yung,* 296 F.3d at 136. Accordingly, *Yung* requires that we consider Sevencan's claim in light of "the more general teachings of *Waller* and *In re Oliver.*" *See id.*[3]

---

3. Our concurring colleague, Judge Pooler, finds no error in the District Court's reliance upon *Vidal.* She reasons: "Once the [District] [C]ourt found that the state court acted properly even under *Vidal,* which arguably is more protective of the ability of family members to attend a trial than is *Waller,* it had no need to determine whether the closure would survive using a *Waller* analysis. A fortiori it would." While this may be true, it does not change the fact that, under AEDPA, district courts may look only to Supreme Court precedent in deciding whether a state court decision amounts to "an unreasonable application of[ ] clearly established federal law." 28 U.S.C. § 2254(d)(1).

Further, Judge Pooler expresses her view that we too should have decided this case on the "narrower" ground that "th[e] evidence was more than sufficient to justify the closure under *Vidal.*" But "[w]e review a district court's denial of a habeas petition *de novo,*" *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir. 2001), and we see no reason to repeat the mistake made by the District Court in relying

*Oliver*, which we (properly) cited in *Vidal*, 31 F.3d at 69, in support of our holding there that the exclusion of family members requires a heightened showing, involved a trial in total secrecy by a state judge who, pursuant to Michigan law, simultaneously acted as grand jury and trial court. *See Oliver*, 333 U.S. at 261–66, 68 S.Ct. 499. In using the language on which we later relied in *Vidal*, the Supreme Court in *Oliver* was making the point that no court had ever permitted a totally secret trial; at the very least family and friends were permitted to attend. *Id.* at 271–72 & n. 29, 68 S.Ct. 499. The holding of the Supreme Court in *Oliver* did not rest on the failure to admit a family member. Rather, the Court held that a trial in *total* secrecy, in the highly unusual circumstances presented there, was unconstitutional. *Id.* at 272–73, 68 S.Ct. 499.

The only "clearly established" law within the meaning of 28 U.S.C. § 2254(d)(1) relevant to this case, then, is *Waller's* four-factor test for closures generally. *See Williams v. Taylor*, 529 U.S. at 412, 120 S.Ct. 1495 (holding that "clearly established Federal law, as determined by the Supreme Court of the United States" means *"the holdings, as opposed to the dicta, of [the Supreme Court's] decisions* as of the time of the relevant state-court decision" (emphasis added)).

Accordingly, Sevencan is entitled to relief only if he can demonstrate that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," *Waller*. *See* 28 U.S.C. § 2254(d)(1).

■ A state court's decision is "contrary to" clearly established law, within the meaning of § 2254(d)(1), if "the state court applies a rule that contradicts" governing Supreme Court law, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405, 406, 120 S.Ct. 1495. Ordinarily, a "run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause," even if a federal court believes that the state-court reached the wrong result. *Id.* at 406, 120 S.Ct. 1495. This is just such a "run-of-the-mill" case—indeed, petitioner does not contend that the result is "contrary to" federal law, but, rather, that the state appellate court "fail[ed] to [properly] apply" federal law. *See* Pet'r's Br. at 29. This claim is properly analyzed pursuant to the "unreasonable application" clause of 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 529 U.S. at 407, 120 S.Ct. 1495.

upon pre-AEDPA case law decided by our Circuit, rather than following AEDPA's mandate to consider only "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In any event, as noted in the text, *Yung* makes clear that *Vidal* is not "clearly established" Supreme Court law. 296 F.3d at 136.

Judge Pooler cites our decision in *Leslie v. Artuz*, 230 F.3d 25, 32–33 (2d Cir.2000), for the proposition that "we have not hesitated to rely on our precedent to establish that a state court did not unreasonably apply Supreme Court precedent." But the Second Circuit opinions we cited in *Leslie* were relied upon because they pertained to similar factual circumstances as those before us in *Leslie* and they reached the same result as the state court decision being reviewed. Accordingly, we cited our own case law in *Leslie* to establish that *Supreme Court precedent* could not possibly mandate an outcome contrary to that reached by the state court—we did not impose a standard upon the state court that, while established in our Circuit, had never been articulated or even addressed by the Supreme Court.

■ A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. In order to grant the writ there must be "[s]ome increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ In this case, the trial court's initial decision to close the courtroom clearly comported with *Waller:* [1] the prosecutor advanced an "overriding interest" that was "likely to be prejudiced" by a public hearing—the safety of the undercover officer;

[2] the closure was "no broader than necessary to protect that interest," as it was solely for the officer's testimony; [3] the trial court considered reasonable alternatives proposed by the defense—the admission of other lawyers and legal interns—and [4] the trial court made "findings adequate to support the closure," in that it found that the undercover officer would indeed be in danger if he was publicly identified. *See Waller,* 467 U.S. at 48, 104 S.Ct. 2210. Accordingly, Sevencan is entitled to relief only if the trial court's refusal to make an exception to its general closure order for his wife was an "unreasonable" application of *Waller.*

In discussing *Waller,* the *Yung* panel noted that "it would be an unreasonable interpretation of *Waller* or, at a minimum, an unreasonable failure to extend *Waller,* not to require a heightened showing before excluding family members," 296 F.3d at 136.[4] Yet, because the *Yung* panel remanded to the District Court for reconsideration of the issue, it never had the opportunity in *Yung* to articulate exactly what the "heightened showing" standard requires a defendant to show. Rather, the opinion in *Yung* indicated that the "heightened showing" could be satisfied in cir-

---

4. This "heightened showing" requirement articulated in *Yung* may appear to be dictum. The *Yung* panel held:

> It is the district court's implicit assumption that the *Vidal* analysis is the only way to measure the propriety of excluding family members that causes us to remand. Because we cannot determine with confidence whether the district court would have reached the same result if it had applied the more general teaching of *Waller* and *In re Oliver* rather than the specific language of *Vidal,* we vacate the district court's judgment and remand for a reassessment of the reasonableness of the state court's adjudication in light *only* of the relevant Supreme Court precedent.

296 F.3d at 136 (emphasis added). Because *Yung* neither applied, nor expressly instructed

the district court to apply, the "heightened showing" standard, its articulation of this standard may be regarded as non-essential to the court's holding. *See* BLACK'S LAW DICTIONARY 408 (5th Ed.1979) (defining 'dictum' as "an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily ... essential to its determination ..."). Nevertheless, because the *Yung* court seems to have implicitly incorporated the idea of a "heightened showing" into its instruction to the District Court regarding further proceedings on remand, we appear to be bound by it. Accordingly, we defer to the *Yung* panel and apply the "heightened showing" requirement set forth in *Yung.*

cumstances where there was no likelihood that the family members would encounter an undercover officer in the future, and, accordingly, remanded the cause to the District Court "for a reassessment of the reasonableness of the state court's adjudication in light only of the relevant Supreme Court precedent." *Id.* at 136 & n. 1.

In this case, unlike in *Yung,* the District Court denied the writ, although it employed the wrong legal standard. Accordingly, we will apply *Yung's* "heightened showing" standard to determine whether we can affirm the District Court's judgment on a ground upon which it did not rely. *Cf. Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997).

In determining the "heightened showing" required by *Yung,* we begin with an examination of *Waller,* the primary "relevant Supreme Court precedent." *See Yung,* 296 F.3d at 136. The four prongs of *Waller* are principally animated by two concerns. The first and second prongs—the requirement that the party seeking closure "advance an overriding interest" and that the closure be "no broader than necessary," *Waller,* 467 U.S. at 48, 104 S.Ct. 2210—together operate to insure that a defendant's right to a public trial is curtailed only to the extent necessary to protect an overriding interest. Accordingly, the "no broader than necessary" requirement is typically satisfied where the overriding interest is the safety of a witness and the courtroom is closed only during that witness's testimony. *See, e.g., Brown v. Artuz,* 283 F.3d 492, 501 (2d Cir.2002).

■■■ The third and fourth prongs of *Waller*—the requirements that the trial court "consider reasonable alternatives to closing the proceeding, and . . . make findings adequate to support the closure," 467 U.S. at 48, 104 S.Ct. 2210 (emphasis add-

ed)—are procedural instructions designed in part to insure that a record exists upon which the closure order can be reviewed. Accordingly, *Waller's* third prong is satisfied where the record establishes that the trial court explicitly considered alternatives to complete closure, *see Ayala,* 131 F.3d at 70–71, and the fourth prong is satisfied where a reviewing court "can glean competent evidence from the record that justifies closure," *Bowden v. Keane,* 237 F.3d 125, 133 (2d Cir.2001).

We next consider the observation in *Oliver* that "without exception all courts [in the United States] have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." 333 U.S. at 271–72, 68 S.Ct. 499. Although in *Vidal* we held that this statement evinced "a special concern for assuring the attendance of family members of the accused," 31 F.3d at 69, it would not be an "unreasonable application" of *Oliver,* *see* 28 U.S.C. § 2254(d)(1), to regard that statement as merely noting that, in some situations, the reasons justifying the closure of a courtroom to the general public would not necessarily justify the exclusion of "friends, relatives and counsel." *Oliver,* 333 U.S. at 272, 68 S.Ct. 499.

■■■ The panel in *Yung* held that "[a]lthough the portion of *In re Oliver* that specifically refers to family members is dicta, we believe that *Waller's* second mandate—that the closure be no broader than required to protect the overriding interest at stake—envisions an examination not just of the length of the closure but also of the portion of the public excluded." 296 F.3d at 136. For this reason, the *Yung* panel held that it would be an unreasonable application of *Waller* not to require a "heightened showing" before excluding family members. *Id.* To the extent we are now required to define this "heightened

showing," we hold that a state trial court's decision to exclude a family member from a criminal trial as part of a properly-entered limited closure order will not be an "unreasonable interpretation" of Supreme Court law so long as the trial court (1) reasonably applies the general requirements of *Waller* and (2) is made aware of the familial relationship before conducting its *Waller* analysis. No further showing is necessary because, where the record reflects that the state trial court was aware of the familial relationship, it necessarily contains an implicit or explicit finding that the reasons justifying the limited closure order under *Waller* also apply to the excluded family member and, therefore, that the closure was not overly broad in its application to the defendant's relatives.

In her concurring opinion, Judge Pooler maintains that "*Yung* . . . requires the prosecution to make a heightened showing to justify the exclusion of family members" and that the standard we articulate in the instant case "does not constitute a showing" and therefore "does not satisfy *Yung*." But the Supreme Court has not articulated a standard requiring heightened protection for a defendant's family members from courtroom exclusion. And if, as Judge Pooler urges, we construe *Yung* as placing an *additional burden* on the prosecution whenever a family member is excluded from the courtroom in order to meet the requirements for courtroom closure set forth in *Waller*, then *Yung's* "heightened showing" requirement clearly would violate Congress' express mandate in AEDPA that "[a]n application for a writ . . . shall

not be granted . . . unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly Federal law, *as determined by the Supreme Court of the United States.*" 28 U.S.C. § 2254(d)(1) (emphasis added).[5]

We recently held in *Kennaugh v. Miller*, 289 F.3d 36, 45 (2d Cir.2002), an opinion by Judge Calabresi, that "a state court determination is reviewable under AEDPA if the state decision unreasonably *failed to extend* a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed" (emphasis added). But an interpretation of "heightened showing" that places an additional burden on the prosecution does not extend the Supreme Court's holding in *Waller* to a new situation. Rather, it *alters* the *Waller* standard whenever a family member is involved. If we were to hold that state court decisions to exclude family members constitute an "unreasonable interpretation" of *Waller* unless they are based upon "stronger proof" than *Waller* generally mandates, we would be requiring state courts to comply with the federal law "as determined by" *this Circuit*, even though "the statutory language makes clear . . . that § 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412, 120 S.Ct. 1495.

██ Our interpretation of *Yung's* "heightened showing" requirement saves this requirement from constituting a violation of AEDPA because it interprets it in a

---

5. Judge Pooler laments that our interpretation of *Yung's* "heightened showing" requirement "will lead ineluctably to the exclusion of an accused's closest family members, those who are most likely to offer the accused support at trial." But this ominous conclusion ignores the relatively stringent requirements of *Waller* and presupposes that state courts and legislatures are entirely unable and unwilling to protect the rights of their defendants. And even if Judge Pooler's concerns were valid, AEDPA simply does not allow us to consider them in reviewing a state court decision pursuant to a petition for habeas corpus.

way that does not alter the standard articulated by the Supreme Court in *Waller.* In order for a court to evaluate whether a courtroom closure is overly broad (as required by *Waller*) insofar as it is being applied to family members, it must independently consider whether the exclusion of family members is necessary. *See Oliver,* 333 U.S. at 272, 68 S.Ct. 499 (arguably suggesting that, in some situations, the reasons justifying the closure of a courtroom would not also justify the exclusion of "friends, relatives and counsel").

█ In the instant case, the record demonstrates that the state trial court was aware of the familial relationship between Sevencan and his wife. *See Sevencan,* 152 F.Supp.2d at 255–56. The court explicitly found a sufficient basis for the exclusion of family members generally at the conclusion of the closure hearing, and implicitly found a sufficient basis for the specific exclusion of Sevencan's wife when the later application for admission to the courtroom was made on her behalf. Because the trial court was clearly aware of the familial relationship between Sevencan and his wife, and because its decision to close the courtroom otherwise comported with *Waller, see supra* at 85, *ante,* the court's exclusion of Mrs. Sevencan from the courtroom during the undercover officer's testimony does not amount to an unreasonable application of clearly established federal law as determined by the Supreme Court. Accordingly, the defendant's constitutional claim based on the courtroom closure must fail.

### III. Conclusion

In sum:

1. The Supreme Court's decision in *Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), requires that, before public access to a courtroom in a criminal case may be restricted, "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the court] must make findings adequate to support the closure."

2. Prior to the enactment of AEDPA and the Supreme Court's decision in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), we held in a habeas case that, in deciding whether to close a courtroom to the public, a trial court must pay particular attention to the exclusion of family members. *See, e.g., Vidal v. Williams,* 31 F.3d 67 (2d Cir. 1994).

3. Pursuant to AEDPA and the Supreme Court's decision in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389, we may only consider the four-factor test set forth by the Supreme Court in *Waller*—and not our own pre-AEDPA case law concerning the exclusion of family members from the courtroom—in deciding whether the trial court unreasonably applied clearly established federal law by closing the courtroom to family members.

4. Following the enactment of AEDPA and the Supreme Court's decision in *Williams v. Taylor,* a panel of this Court held in *Yung v. Walker,* 296 F.3d 129, 136 (2d Cir.2002), that a state trial court's exclusion of a family member from a criminal trial as part of a limited closure order amounts to an unreasonable application of *Waller* unless there has been a "heightened showing" that the exclusion is necessary.

Based upon the above, we hold that:

1. The requirement set forth in *Yung v. Walker,* 296 F.3d 129, 136 (2d Cir.2002), that a "heightened showing" be made be-

fore a state trial court excludes a family member from a criminal trial as part of a limited closure order is satisfied where the record reflects that the state trial court considered the familial relationship at the time the family member was excluded;

2. Where the record reflects that the state trial court was aware of the familial relationship, it necessarily includes an implicit or explicit finding that the court considered the familial relationship and found that the reasons justifying the *Waller* closure order extend to excluded family members; and

3. Because the state trial court in the instant case clearly considered the familial relationship in determining whether to exempt Sevencan's wife from a properly entered limited closure order, its decision to exclude Sevencan's wife was not "an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States," within the meaning of 28 U.S.C. § 2254(d).

Accordingly, we affirm the judgment of the District Court.

POOLER, Circuit Judge, concurring in the judgment.

I concur in the judgment. Regretfully, I cannot concur in the majority's reasoning, which has two central flaws. First, the majority ignores the careful factual record made by the district court and thus sweeps far more widely than necessary to resolve this appeal. More important, the majority opinion misconstrues and conflicts with *Yung v. Walker*, 296 F.3d 129 (2d Cir.2002) and impermissibly restricts the authority granted to the district court by 28 U.S.C. § 2254(d)(2).

To explain why the record below justifies affirmance without any consideration of the parameters of *Yung*, I will briefly describe the background of the issue before us.

At Sevencan's trial, the prosecution requested closure of the courtroom for the testimony of the undercover officer who provided the most significant testimony against Sevencan. *Sevencan v. Herbert*, 152 F.Supp.2d 252, 254–55 (E.D.N.Y.2001). After Sevencan objected to closure, the trial court conducted a hearing at which the undercover officer testified that he worked throughout New York City and that five to ten individuals targeted by his past investigations remained at large. *Id.* at 255. He claimed that testifying would endanger his life and limit his ability to function as an undercover officer. *Id.* Based on the undercover officer's testimony, the trial court closed the courtroom to the public including Sevencan's family members. *Id.*

On June 24, 1993, the trial judge told the attorneys that both the undercover officer and the assistant district attorney had received death threats. *Id.* Three trial days later, as the undercover officer's testimony continued, Jacinta Asillo Sevencan, the defendant's wife, came to the courtroom. *Id.* Defense counsel requested that Mrs. Sevencan be admitted because she "works all the time [and t]his is practically the only day she can get here and would like to come in." *Id.* (quoting Tr. at 2550). After the court reminded counsel that the courtroom was sealed, counsel responded: "Yes it is. That's why I'm applying to you it be allowed." *Id.* The court declined defense counsel's request, finding that Mrs. Sevencan did not fall within the scope of an exception it had created for attorneys and students who worked with the defense counsel. *Id.* at 256.

After Sevencan's conviction and exhaustion of state appellate remedies, he filed a habeas petition containing a claim based on Mrs. Sevencan's exclusion. United

States District Judge Allyne Ross appointed counsel for Sevencan and conducted a hearing. At the hearing, respondent submitted tapes of conversations that suggest Mrs. Sevencan's knowledge of her husband's illegal activities and her familiarity with several of Sevencan's associates including Turon Taspinar, who was Sevencan's intermediary with "the Boss" in Turkey. *Sevencan,* 152 F.Supp.2d at 258–59.

The undercover officer also testified, adding significantly to the allegations he previously had made in support of closure. He testified that he purchased large quantities of heroin from Sevencan and Taspinar and that the two offered to give him two kilos of heroin in return for the murder of a Turkish politician. Sevencan also admitted to the undercover that both he and his bodyguard had committed murder. The undercover officer considered the Turkish heroin conspiracy to be organized crime and Sevencan to be one of its bosses. *Id.* at 257.

From the beginning of the undercover officer's trial testimony, he protected his safety by switching entrances to the courthouse and entering at different times. Two armed bodyguards accompanied him. *Id.* at 258. After the undercover officer received a death threat, he began to wear a bulletproof vest when entering and leaving the courthouse, something he never had done before. *Id.*

At the time of trial, the officer intended to return to the same general area in which Sevencan plied his narcotics trade. The officer did business in bars on Sheepshead Bay Road, a large shopping area for people in Mrs. Sevencan's neighborhood. He spent between two and five days a week in this area and intended to continue buying from Turkish drug dealers.

Judge Ross held that the closure of the courtroom to Mrs. Sevencan during one day of the undercover officer's testimony did not deny Sevencan his right to a public trial because (1) protection of the undercover's safety and security was an important interest within the meaning of *Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and (2) the State demonstrated that Mrs. Sevencan was likely to encounter the undercover officer in the course of her daily activities. *Sevencan,* 152 F.Supp.2d at 264–65. Although the court acknowledged that Mrs. Sevencan did not pose a direct physical threat to the officer, it held that her ability to report the undercover's description to other more dangerous individuals was sufficient. *Id.* at 265–66. Judge Ross also found that Mrs. Sevencan was "a timid pliable woman" likely to be susceptible to a request from Taspinar, who still was at large, to inform him if she spotted the undercover officer. *Id.* at 266–67. Finally, the court found that Mrs. Sevencan deliberately minimized her relationship with Sevencan's co-conspirators. *Id.* at 266.

Judge Ross' analysis of the threat Mrs. Sevencan posed to the undercover officer rested in part on *Vidal v. Williams,* 31 F.3d 67 (2d Cir.1994). In this case, which was decided before the effective date of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), we held that closure of a courtroom to defendant's parents was not justified where the state proved neither that the parents were likely to encounter the undercover officer nor that they were inclined to harm him. *Id.* at 69. The majority holds that Judge Ross erred by applying *Vidal* to the facts of this case. I disagree. In *Yung,* we held that proving likelihood of encounter and/or inclination to harm is not the only way to justify closing a trial to the defendant's relatives. *Yung,* 296 F.3d at 134. We neither held nor implied that a district court could not use a *Vidal* analysis as a preliminary step in adjudicating a family courtroom closure

issue. Here, the district court would have erred had it granted the petition relying on *Vidal* and ignoring *Waller*. Instead, the district court denied the petition. Once the court found that the state court acted properly even under *Vidal*, which arguably is more protective of the ability of family members to attend a trial than is *Waller*, it had no need to determine whether the closure would survive using a *Waller* analysis. A fortiori, it would.

At the time Judge Ross ruled, we had issued no post-AEDPA cases addressing closure of a courtroom to a family member. Thus, the judge acted properly and in the interest of judicial economy by first testing the facts against the restrictive *Vidal* principle. Although the majority contends that the district court could not look to our cases to determine whether the state unreasonably applied Supreme Court precedent, we have not hesitated to rely on our precedent to establish that a state court did not unreasonably apply Supreme Court precedent. *See Leslie v. Artuz*, 230 F.3d 25, 32–33 (2d Cir.2000) (refusing to find an unreasonable application of Supreme Court precedent because this circuit had declined to extend the right at issue to similar facts), *cert. denied*, 531 U.S. 1199, 121 S.Ct. 1206, 149 L.Ed.2d 120 (2001). Error could have occurred only if Judge Ross found the closure improper under *Vidal* and then failed to consider whether it nevertheless constituted an unreasonable application of *Waller*.

Before I address the merits of the district court's decision, I pause to consider Sevencan's contention that the district court erred by holding a supplemental hearing.[1] Although Sevencan recognizes our prior holding in *Nieblas v. Smith*, 204 F.3d 29 (2d Cir.1999), that district courts

have discretion to hold a supplemental hearing on courtroom closure, he argues that *Nieblas* is contrary to both *Waller* and 28 U.S.C. § 2254(d)(1).

Sevencan relies on the fourth prong of the *Waller* test, which requires that the trial court make findings adequate to support closure, 467 U.S. at 48, 104 S.Ct. 2210, arguing that this requirement precludes the consideration of after-the-fact evidence. We already have rejected his argument. *Nieblas*, 204 F.3d at 31–32; *see also Yung*, 296 F.3d at 137; *Gonzalez v. Quinones*, 211 F.3d 735, 738 (2d Cir.2000).

Sevencan's statute-based argument fares no better. Section 2254(d)(1) precludes a district court from granting a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that . . . involved an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States." Sevencan argues that, by negative implication, this language requires the district court to grant the writ whenever the state trial court has unreasonably applied Supreme Court precedent to the trial record. In Sevencan's view, because the court must grant the writ as soon as it finds an unreasonable interpretation of Supreme Court precedent, it lacks authority to conduct a hearing. He also argues that Section 2254(d)(1), which was enacted as part of AEDPA and thus was not in effect when Nieblas filed his petition, implicitly overruled *Nieblas*. Of course, both *Yung* and *Gonzalez* addressed post-AEDPA petitions. More important, Section 2254(d)(1) describes when a writ cannot be granted. It does not explicitly or implicitly invalidate the district courts' long-standing practice of holding evidentia-

---

1. Like the majority I find it unnecessary to consider whether Sevencan's claim is proce-

durally barred in light of its lack of merit.

ry hearings to supplement a deficient state record. Therefore, Section 2254(d)(1) does not preclude the use of these hearings.

Sevencan alternatively argues that (1) the facts of his case did not justify a *Nieblas* hearing and (2) a *Nieblas* hearing should be limited to facts that the witnesses knew at the time of trial, leaving no room for speculation. Neither of these arguments has merit.

The hearing in this case was well within the scope of the district court's discretion as described in *Nieblas*. Two factors supported the *Nieblas* court's affirmance of the district court's decision to hold a hearing. First, the petitioner made only a perfunctory objection at trial. Second, the law changed after trial, creating a greater necessity for a fully developed record. We held that "where either of the above two reasons or any other similar reason exists, it is particularly appropriate for a habeas court to gather additional evidence—rather than granting the defendants the 'windfall' of a new trial—where the alleged constitutional violation does not affect the fairness of the outcome at trial, as in courtroom closure cases like this one." *Nieblas*, 204 F.3d at 32 (quoting *Waller*, 467 U.S. at 50, 104 S.Ct. 2210). Like Nieblas, Sevencan made only a perfunctory objection to the exclusion of his wife. He did not alert the trial court that a different standard might govern his wife's exclusion. In addition, after Sevencan's trial in 1993, New York's Court of Appeals decided *People v. Nieves*, 90 N.Y.2d 426, 660 N.Y.S.2d 858, 683 N.E.2d 764 (1997), in which it held that to exclude a defendant's wife and children, the People must establish "a 'substantial probability' that the officer's safety would be jeopardized by [their] presence." *Nieves*, 660 N.Y.S.2d at 861, 683 N.E.2d 764. As in *Nieblas*, it is likely that the People would have built a stronger case for the exclusion

of Mrs. Sevencan had *Nieves* been New York law at the time of trial. Thus, the district court did not err by holding a *Nieblas* hearing. Nor does the district court's decision indicate that the court relied on facts not known to the witnesses at the time of trial.

Judge Ross clearly made the right decision on the merits. The proof at trial and at the *Nieblas* hearing established that Sevencan admitted to murder, tried to arrange for the undercover officer to kill a rival, and admitted that his bodyguard also had committed a murder. The evidence also established that the undercover officer and the assistant district attorney received death threats several days before Mrs. Sevencan asked to be admitted. After receiving those threats, the undercover officer began to wear a bullet proof vest when he entered and left the courthouse. Even before that time, the officer varied his times of arrival and was accompanied by two bodyguards. Finally, the evidence established that Mrs. Sevencan had reason to know the nature of her husband's business, maintained ties to men in her husband's criminal organization, and shopped and ran other errands in the area where the undercover continued to operate. This evidence was more than sufficient to justify the closure under *Vidal* or any other reasonable interpretation of *Waller*.

As a general matter, cases should be decided on the narrowest basis possible, leaving for a future case questions not raised by the facts. Because the majority decides issues well beyond the scope of the record, I cannot concur in its opinion.

I also respectfully conclude that the majority's analysis of the courtroom closure question is erroneous. This analysis comprises three steps. First, the majority finds that the "heightened showing" required to exclude family members "is satisfied where the record reflects that the

state trial court considered the familial relationship at the time the family member was excluded." Second, the majority says that the state court's knowledge that Sevencan's wife wished to be admitted triggered an implicit conclusion that the need to protect the undercover officer justified her exclusion. Finally, the majority holds that "[b]ecause the trial court was clearly aware of the familial relationship between Sevencan and his wife, and because its decision to close the courtroom otherwise comported with *Waller*, the court's exclusion of Mrs. Sevencan from the courtroom during the undercover officer's testimony does not amount to an unreasonable application of clearly established federal law as determined by the Supreme Court." (internal citation omitted). While I have no quarrel with the majority's second step, the remainder of its analysis conflicts with *Yung* and misinterprets AEDPA.

The majority's analysis distorts *Yung*. We held in *Yung* that it would be "an unreasonable interpretation of *Waller* or, at a minimum, an unreasonable failure to extend *Waller*, not to require a heightened showing before excluding family members." *Yung*, 296 F.3d at 136. We did so because we found *Waller* was informed by *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), in which the Supreme Court noted in dicta that "without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." *Id.* (quoting *Oliver*, 333 U.S. at 271–72, 68 S.Ct. 499). Building on this premise, we held that in applying the second prong of *Waller*—measuring the extent of the closure against the pertinent overriding interest—a court must require a "heightened showing" before expanding the extent of the closure to family members. *Id.*

The majority contends that the trial court's consideration of Mrs. Sevencan's request to be admitted is a heightened showing. This focus on the state court's thought process conflicts with *Yung*, which requires the prosecution to make a heightened showing to justify the exclusion of family members. Because the trial court's consideration of a request to be admitted does not constitute a showing, it does not satisfy *Yung*.

The majority posits that *Waller* can be reasonably interpreted to allow the exclusion of family members based on the same showing that would justify excluding the ordinary curious onlooker. It claims that requiring a heightened showing would alter the *Waller* standard. I do not agree. *Waller's* core is the requirement that a trial court balance the overriding interest established by the prosecution against the extent of the closure. 467 U.S. at 48, 104 S.Ct. 2210 ("the closure must be no broader than necessary to protect that interest"). In *Yung*, we recognized that it would be an unreasonable application of *Waller* or an unreasonable failure to extend it not to assess the breadth of the closure in terms both of its length and of "the portion of the public to be excluded." *Yung*, 296 F.3d at 136. Because *Waller* imposes a balancing test, it is clear that some closures will require a more substantial showing of a threat to the relevant overriding interest than others. Precluding family members from attending an accused's trial is such a closure.

In effect, the majority's view allows no consideration under *Waller* of the reasonableness of the state court's decision to exclude family members as long as (1) the prosecution's evidentiary showing was sufficient to exclude the general public and (2) the state court is aware that a family member wishes to be admitted. This restriction on the habeas court's review pow-

er conflicts with AEDPA, which allows the grant of the writ if a state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). While an evidentiary showing that justifies exclusion of the general public may justify exclusion of family members in some cases, it will not always do so. The majority's analysis will lead ineluctably to the exclusion of an accused's closest family members, those who are most likely to offer the accused support at trial, even where those family members pose no threat to the interest advanced to support closure. This, I believe, is an unreasonable interpretation of *Waller*, which requires weighing the extent of any closure against the overriding interest at stake.[2] *See Waller*, 467 U.S. at 48, 104 S.Ct. 2210.

## CONCLUSION

I am hard put to understand why the majority chose this case, which presents no difficult question, to limit *Yung* in a way that is unnecessary for resolution of the appeal. In any case, because I believe the majority opinion is directly at odds with *Yung*, I can concur only in the judgment.

2. I also question whether the majority's restricted interpretation of *Waller* and *Yung* will ever allow a habeas petitioner to rely on the exclusion of family members as a ground for relief. Ultimately the majority relies on the state court's awareness that a family member is in the courtroom. However, if the trial court is unaware of the family member's presence, it will be because petitioner failed to alert the court. In this event, we will find the claim procedurally barred.

