**Alexander MCCARTHY, Petitioner–Appellant,**

v.

**Leonard A. PORTUONDO, Superintendent, Respondent–Appellee.**

No. 01–2379.

United States Court of Appeals, Second Circuit.

March 27, 2003.

Yuanchung Lee, The Legal Aid Society, Federal Defender Division, New York, New York, for Petitioner–Appellant Alexander McCarthy.

Ruth E. Ross, Assistant District Attorney (Leonard Joblove, Assistant District Attorney, on the brief), for Charles J. Hynes, District Attorney Kings County, Brooklyn, New York, for Respondent–Appellee Leonard A. Portuondo.

PRESENT: KATZMANN, B.D. PARKER, and RAGGI, Circuit Judges.

Summary Order

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 27th day of March, two thousand three.

UPON DUE CONSIDERATION of this appeal from the United States District Court for the Eastern District of New York (Gleeson, John, *J.*), it is hereby

ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

The Petitioner, Alexander McCarthy, appeals from the judgment of the District Court denying his petition for habeas corpus. McCarthy's claim is grounded in his allegation that the New York state trial court violated his Sixth Amendment right to a public trial when it ordered the courtroom partially closed during the testimony of an undercover officer. He also claims that the state court similarly violated the Sixth Amendment when it refused to allow his mother to enter the courtroom after the undercover officer's testimony had commenced, despite its own earlier determination that, with certain accommodations, her presence did not threaten the effectiveness or safety of the testifying officer. Because we conclude that the state court's decisions were not contrary to or unreasonable applications of federal law, as established by the United States Supreme Court, we must affirm.

At the outset, we reject McCarthy's argument that we can avoid applying the highly deferential standard of legal and factual review mandated by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2254(d), (e) (2000). McCarthy argues that such deferential review is only required "with respect to any claim that was adjudicated on the merits in State court proceedings." *Id.* § 2254(d). He points to language in the Appellate Division's rejection of his Sixth Amendment claim on direct appeal as evidence of the fact that his claim was not, in fact, decided on its merits. But that argument can hardly help McCarthy; if his claims were not decided on the merits, then they must have been procedurally barred. *See Jenkins v. Artuz*, 294 F.3d 284, 291 (2d Cir.2002). In that case, we could not now consider them at all, unless he were to show cause and prejudice, *see Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which he has not attempted to do. Indeed, since the time McCarthy's brief was filed, we have rejected this same argument by another petitioner who relied on identical Appellate Division language. *See Ryan v. Miller*, 303 F.3d 231, 245–46 (2d Cir. 2002).*

Therefore, our review of the state court's decision is governed by AEDPA. First, we must presume that the state court's factual findings are correct, and can overturn them only if the petitioner demonstrates clear and convincing evidence of their incorrectness. *Yung v. Walker*, 296 F.3d 129, 134 (2d Cir.2002). We may grant the writ only if the state

court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence," *id.* § 2254(d)(2). "An unreasonable application of federal law is .... [an] increment of incorrectness beyond error," *Yung*, 296 F.3d at 135 (citing *Williams v. Taylor*, 529 U.S. 362, 409–12, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)) (internal quotations omitted), and can include an "unreasonable refusal 'to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed,'" *id.* (quoting *Kennaugh v. Miller*, 289 F.3d 36, 45 & n. 2 (2d Cir.2002)).

The state trial court's initial decision partly to close its courtroom was not unreasonable. A court may only limit the Sixth Amendment right to public trial where "the party seeking to close the hearing ... advance[s] an overriding interest that is likely to be prejudiced" absent closure, and "the closure [is] no broader than necessary to protect the interest." *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In addition, the court must engage in express deliberation and fact-finding before ordering the closure, considering "reasonable alternatives to closing the proceeding" that are proposed by counsel, *see id.; Sevencan v. Herbert*, 316 F.3d 76, 85 (2d Cir.2002); *Ayala v. Speckard*, 131 F.3d 62, 71–72 (2d Cir.1997) (en banc), *cert. denied*, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 747

---

* At oral argument, McCarthy argued that our decision in *Miranda v. Bennett*, 322 F.3d 171 (2d Cir.2003), qualified the holding of *Ryan*. We disagree. It is plain from the language of *Miranda* that we held, as in *Ryan* and *Jenkins*, that there are two alternative dispositions of a petitioner's claims in state court: "either

without merit or procedurally barred." *Miranda*, 322 F.3d at 177–78. Therefore, if "a given claim [is] properly preserved for appellate review, we will conclude that it fell into the "without merit" part of the disjunct," *id.*, thereby subjecting it to AEDPA deferential review.

(1998), and making findings "adequate to support the closure," *Waller*, 467 U.S. at 48, 104 S.Ct. 2210.

Here, the state trial court heard evidence in support of the State's motion to close the courtroom during the testimony of its undercover officer, known to us only as "UC–2499." Asked, "Would you be returning to the vicinity of East 21 and Cortel you?" the officer replied, "I assume, I will. I would be." UC–2499 also stated that he routinely took steps to protect his identity when entering court, had one or two open undercover cases, and had been threatened with violence in the past while working undercover. Based on this evidence, the trial court expressly found, "[the officer] expects to return to the immediate vicinity of Cortelyou Road and East 21 Street, which is exactly the location of this buy.... Now, if it were Brooklyn South alone, I would agree with [McCarthy], but, I believe, the testimony is to the effect that he would expect to return to that very neighborhood, and possibly, specifically, that location." The court also not only discussed, but actually agreed in significant part with, the more limited closure suggested by McCarthy, i.e., that his mother and girlfriend remain in the courtroom seated at a location where they would be able to hear but not see the undercover officer as he testified.[2]

Based on these facts, we believe that the court's initial decision to close the courtroom was entirely correct. We read no equivocation in the officer's statement that he "would be" returning to the intersection where he arrested McCarthy. If any was implied by his tone or manner, the trial court certainly could have seen and accounted for it. Therefore, we cannot say that its determination of the facts was unreasonable. Turning to the reasonable-

ness of the court's legal determination, we have repeatedly held that closures under circumstances similar to those disclosed by the testimony of UC–2499 satisfied the first prong of the *Waller* test. *See, e.g.,* *Brown v. Artuz*, 283 F.3d 492, 501–02 (2d Cir.2002); *Nieblas v. Smith*, 204 F.3d 29, 33 (2d Cir.1999); *Ayala*, 131 F.3d at 72. While it is true that we have said "the [S]tate's obligation to show an overriding interest cannot be met by a proffer of mere speculation," *English v. Artuz*, 164 F.3d 105, 109 (2d Cir.1998), the trial court reasonably found that the officer's testimony was not merely speculative. The closure at its outset was no wider than necessary; once the court determined that a small number of spectators could remain without jeopardizing the secrecy of UC–2499's identity, it allowed those persons to stay. And, as we have noted, the court made express findings on both of these factors.

■ While it is somewhat less clear whether the trial court should have refused to admit McCarthy's mother when she belatedly arrived in the midst of the proceedings, we cannot say, ultimately, that its decision involved an unreasonable application of *Waller*. Again, the trial court initially determined that McCarthy's mother and girlfriend should be allowed in the court, because otherwise the closure would not have been tailored to the narrowest extent necessary to protect the State's overriding interest in secrecy. In so ruling, the court made clear its expectation that the women would be seated in the appointed courtroom location–out of the sightline of both the judge and witness– before the officer took the stand and that they would remain there throughout his testimony. In a number of exchanges with the court before the officer entered the

---

**2.** The trial court rejected McCarthy's suggestion that his girlfriend's son, too, could be allowed to stay in the courtroom. McCarthy's petition does not challenge the exclusion of the child.

courtroom, defense counsel undeniably suggested that both women were so seated. Apparently, that was not the case, but it was not until a sidebar conference several minutes into the undercover officer's testimony that defense counsel alerted the court to the fact that McCarthy's mother was outside the courtroom seeking to gain admittance. At that point, the court could not have admitted her without either risking unmasking UC–2499 or interrupting the course of his testimony. In tailoring a closure, a court need not consider alternatives that would threaten *other* overriding interests. *Cf. Ayala*, 131 F.3d at 71–72 ("[W]e do not believe that the Supreme Court wanted trial judges selecting the alternative of limited closure to consider further alternatives that themselves pose substantial risks to a fair trial for the defendant."). "[P]reventing jurors from being distracted during the testimony of a critical trial witness qualifies as an 'overriding interest' justifying a restriction on courtroom access." *Williams v. Artuz*, 237 F.3d 147, 152–53 (2d Cir.) (quoting *Waller*, 467 U.S. at 48, 104 S.Ct. 2210), *cert. denied*, 534 U.S. 924, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001).

Thus, in order to conclude that the trial court's closure was not narrowly tailored, we would have to hold, in effect, that there was no significant danger that a recess would have distracted the jurors. The trial judge found that the "circumstances" and "logistics" of clearing the courtroom made taking a recess a relatively complicated affair. We certainly are not in a position to gainsay that determination. *See* 28 U.S.C. § 2254(e). A court could reasonably infer from this premise that taking a recess would have unduly distracted the jury. If so, then it could also reasonably have concluded that the court's partial closure was still narrowly tailored, despite the fact that McCarthy's mother was not admitted. While we may or may not have reached the same balance had we been in

the trial court's position, in light of our precedents construing what is "clearly established" under the Supreme Court's Sixth Amendment precedents, we cannot say that the trial court's decision was an unreasonable application of the *Waller* principles.

Finally, McCarthy's brief can be read to argue that his mother should have simply been permitted to enter, because, even if she had seen UC–2499, she was no threat to his safety or effectiveness. We have not spoken with perfect consistency on the showing the State must make in excluding family members under a Sixth Amendment analysis. *Compare Sevencan*, 316 F.3d at 85–86, *with id.* at 92 (Pooler, J., concurring) (arguing that the majority's opinion "conflicts with *Yung*"). However, even under the more demanding elaborations of *Waller* we have suggested, the trial court here was justified in concluding that McCarthy's mother represented a threat to UC–2499's effectiveness. For example, in *Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir.1994), *cert. denied*, 513 U.S. 1102, 115 S.Ct. 778, 130 L.Ed.2d 672 (1995), we rejected the State's claim that an undercover witness's safety might be threatened if the defendant's parents learned the witness's identity. Critical to our analysis was our observation that the parents "did not frequent the vicinity [where the officer was operating]," *id.* at 68, and therefore that "there was little chance that the parents would have encountered [the officer] during an undercover operation," *id.* at 69. Similarly, in *Yung*, we implied that the State probably could make an adequate showing if it could show a "likelihood of encounter" with the family. 296 F.3d at 136 n. 1. In this case, McCarthy's mother lived two and a half blocks from the site of the arrest, where, again, UC–2499 expected to return. While there is certainly no evidence McCarthy's mother would have attempted deliberately to harm UC–2499, the possibility that she would recognize

him on the street and disclose his identity as a police officer to others, perhaps inadvertently, was inherent in her very proximity. That would, at the least, limit his effectiveness. The state court nevertheless tried to accommodate McCarthy's Sixth Amendment interests by permitting his mother and girlfriend to remain in the courtroom during the undercover's testimony, provided they were seated in a special location before the witness took the stand. McCarthy having agreed to this arrangement, he cannot now fault the trial court for his mother's failure to abide by its terms.

Therefore, we cannot say the state trial court's decision was at any point contrary to, or an unreasonable application of, the Supreme Court's Sixth Amendment jurisprudence. Accordingly, for the reasons stated above, the judgment of the District Court is hereby Affirmed.