Armando **GUZMAN**, Petitioner–Appellant,

v.

Charles **SCULLY**, Superintendent of Greenhaven Correctional Facility, Respondent–Appellee.

No. 935, Docket 95–2275.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1996.

Decided April 8, 1996.

Before NEWMAN, Chief Judge, and MAHONEY and FRIEDMAN,* Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal raises the issue of whether the exclusion of a defendant's family members and friends during part of the examination of a prosecution witness was sufficiently justified to comport with the constitutional right of a criminal defendant to a public trial. Petitioner-appellant Armando Guzman appeals from the April 5, 1995, judgment of the United States District Court for the Southern District of New York (John F. Keenan, Judge), denying his petition for a writ of habeas corpus challenging his state court conviction on a weapons charge. Because we conclude that the partial courtroom closure in this case was insufficiently justified, we reverse the judgment of the District Court and remand for the issuance of a writ of habeas corpus.

### Background

Armando Guzman was indicted in 1986 by a New York state grand jury for second-degree murder, second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon. After a jury trial in 1988 before the New York Supreme Court (Bronx County), he was acquitted on the second-degree murder charge and second-degree weapons charge, and convicted on the third-degree weapons charge. Guzman was sentenced as a persistent felony offender to an indeterminate term of imprisonment from fifteen years to life.

At one point during the trial, just prior to the cross-examination of a prosecution witness, Nelson Cedeno, the State requested that the trial court exclude four women from the courtroom during Cedeno's cross-examination.[1] Two of these women were either members of Guzman's family or his friends. The State claimed that their presence in the

Philip S. Glickman, Rochester, N.Y., for petitioner-appellant.

Nancy D. Killian, Asst. Dist. Atty., New York City (Robert T. Johnson, Dist. Atty., Joseph N. Ferdenzi, Asst. Dist. Atty., New York City, on the brief), for respondent-appellee.

---

* Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. Although the record is not entirely clear, we were informed at oral argument that these four women had not been present in the courtroom the previous day when the witness completed his direct testimony.

courtroom was intimidating to Cedeno. This claim was asserted in the following colloquy:

[*Prosecution*]: Your Honor, I have an application at this time.

Some minutes ago I brought down the witness Nelson Cedeno. As he got off the elevator, he observed a number of females in front of the courtroom, and advised me that they are variously the wife or girlfriend and other family or related members to one Jos[é] Blanco.

Now [defense counsel] has previously advised the Court that Jos[é] Blanco otherwise known apparently as Sinbad—right?

. . . .

— is a prospective witness and has been produced from prison Upstate pursuant to [defense counsel's] order to produce.

There is certainly antagonism between Jos[é] Blanco and this witness based on the events in question and also based on the contradictory testimony that's to be anticipated from each of them.

The presence of these female relatives or family members, whatever they may be, is intimidating to the witness, and he has so stated to me.

Accordingly, I am asking that they be removed during the continuation of Mr. Cedeno's testimony.

. . . .

... It's my understanding based on off the record conversation with [defense counsel] that these people are here essentially for the purpose of visiting or hoping to view Mr. Blanco when he is produced.

I can accept that.

And even assuming that it is—their appearance in the courtroom is for that purpose alone and is inadvertent with respect to any possible intimidation impact on the witness, the fact remains that the witness is intimidated by their being here.

And for that reason, I'm asking they be excluded.

[*Defense counsel*]: Since making that information known to the Court which [the prosecutor] alluded to, I've ascertained

that two of the four women out there are related to [the] prospective witness referred to as Sinbad. Two other women, I've been told, are not so related but are either familially or socially related to my client.

*The Court:* And I take it, [defense counsel], essentially that you are not concurring with the request of the District Attorney.

[*Defense Counsel*]: No, I do not.

*The Court:*—that—and you will be opposing it?

[*Defense Counsel*]: I am.

The trial court then, without conducting any further inquiry, immediately granted the prosecutor's request, stating the following by way of justification:

In order to facilitate the witness's being able to testify without interference, without fear, without concern which apparently he has communicated, I will then exclude the witnesses only during the testimony of that witness.

Thus, with only a brief statement of its reasons, the trial court partially closed its courtroom to these four women.

After his conviction, Guzman unsuccessfully exhausted his state court remedies. *See People v. Guzman*, 176 A.D.2d 561, 575 N.Y.S.2d 26 (1st Dep't 1991), *appeal denied*, 79 N.Y.2d 920, 582 N.Y.S.2d 80, 590 N.E.2d 1208 (1992). He then brought this petition for a writ of habeas corpus before the District Court pursuant to 28 U.S.C. § 2254 (1988). Guzman claimed, among other things, that he was denied his Sixth and Fourteenth Amendment right to a public trial.[2] The District Court denied his petition on the merits. *See Guzman v. Scully*, No. 92 Civ. 5175, 1995 WL 135590 (S.D.N.Y. March 29, 1995). Guzman now appeals.

## Discussion

The Sixth Amendment provides a guarantee that the accused shall enjoy the right to a "public trial." U.S. Const. amend. VI. The Supreme Court has held that, al-

---

2. Guzman also claimed that his conviction was obtained in violation of due process because the trial court omitted an alibi instruction. He fur-

ther alleged two other claims in the District Court that have been abandoned on appeal.

though the right to a public trial is not absolute, there is "[t]he presumption of openness." *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I* ); *see Waller v. Georgia*, 467 U.S. 39, 45, 104 S.Ct. 2210, 2214–15, 81 L.Ed.2d 31 (1984). In *Waller*, the Supreme Court identified four requirements, important though not particularly onerous, that must be met before public access to a criminal proceeding may be denied:

[1]   the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced,

[2]   the closure must be no broader than necessary to protect that interest,

[3]   the trial court must consider reasonable alternatives to closing the proceeding, and

[4]   it must make findings adequate to support the closure.

*Id.* at 48, 104 S.Ct. at 2216 (citing *Press–Enterprise I*, 464 U.S. at 510–13, 104 S.Ct. at 824–26); *see Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 778, 130 L.Ed.2d 672 (1995); *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir.1992). The first requirement—an "overriding interest" in favor of closure—is slightly relaxed where the moving party seeks only a partial closure of the courtroom, rather than a complete closure. In those situations, the moving party need show only a "substantial reason" rather than an "overriding interest." *Woods*, 977 F.2d at 76–77; *see United States v. Doe*, 63 F.3d 121, 129 (2d Cir.1995).

█   In the pending appeal, Guzman alleges a violation of his Sixth and Fourteenth Amendment right to a public trial based on the trial court's exclusion of four women from the courtroom during the cross-examination of one prosecution witness, Nelson Cedeno. The trial court based its decision solely upon representations made by the prosecutor that Cedeno felt intimidated by the presence of these four women in the courtroom. The trial court, however, did not inquire of the witness whether he in fact felt intimidated nor whether his fear, if genuinely held, was sufficiently well-founded to constitute an "overriding interest" within the meaning of *Waller*, or at least a "substantial reason" within the meaning of *Woods*. Indeed, the trial court made no inquiry whatsoever. Although this Circuit has not required that a separate hearing must always be held before the courtroom doors may be closed, the lack of such a hearing is relevant to the lawfulness of any closure. *See Woods*, 977 F.2d at 76–77 (noting that trial judge conducted short colloquy with witness who claimed to be fearful).

Even more disturbing is the fact that when defense counsel pointed out that two of the women were *not* related to José Blanco, as the prosecutor had alleged, but were instead related to the defendant, the trial court still did not make any inquiry to ascertain the relevant facts. If that inquiry had confirmed defense counsel's assertion that two of the women were part of Guzman's family or at least his friends, then the trial court would have been obliged to give significant weight to this circumstance in determining whether closure was warranted. *See In re Oliver*, 333 U.S. 257, 271–72 & n. 29, 68 S.Ct. 499, 506–07 & n. 29, 92 L.Ed. 682 (1948) (noting special concern for assuring attendance of defendant's family members and friends).

Under the circumstances presented in this case, the trial court's partial closure of its courtroom violated Guzman's right to a public trial. This constitutional infirmity stems primarily from the fact that the trial court relied on the unsubstantiated statements of the prosecutor, rather than conducting an inquiry of the prosecution witness on whose behalf the closure request was made. This resulted in a violation of the first *Waller* criterion and consequently led to noncompliance with the other criteria as well.

█   Since no testimony was elicited from the witness alleged to be feeling intimidated, there was no ascertainment that the reason advanced by the prosecutor was "substantial," *Woods*, 977 F.2d at 76, or "likely to be prejudiced," *Waller*, 467 U.S. at 48, 104 S.Ct. at 2216. There was no showing that any

such interest even existed.[3] *See Ip v. Henderson,* 710 F.Supp. 915 (S.D.N.Y.) (no determination that danger from disclosure of identity, alleged by witness, was "grave enough" to warrant closure; writ issued), *aff'd mem.,* 888 F.2d 1376 (2d Cir.1989). Where a government witness, such as Nelson Cedeno, is concerned for his safety due to the disclosure of his identity, a minimal inquiry might suffice; but where, as here, the only claim is intimidation by the *presence* of certain observers who already know the witness's identity, then the witness must persuade the judge, if he can, that there is substance to his claim that having the observers see and hear his testimony is likely to produce some incremental anxiety beyond that which already exists from their awareness of his identity and of the fact that he is a prosecution witness.

With the interest in favor of closure merely alleged but not established, there could be no compliance with the second requirement that the closure be "no broader than necessary to protect" the interest. *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216. The third requirement of considering alternatives to closure was not even attempted to be met. Since there was no issue of concealing the witness's identity from the four women but only a claim of intimidation by their presence, seating them at the rear of the courtroom might well have sufficed to allay whatever legitimate anxiety, if any, the witness may have apprehended.

The trial court's conclusory justification for excluding the four women failed to satisfy the fourth requirement of "findings adequate to support the closure." *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216 ("broad and general" findings insufficient); *see also Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 13–14, 106 S.Ct. 2735, 2742–43, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II* ) ("[P]roceedings cannot be closed unless specific, on the record findings are made demonstrating that 'closure is

essential to preserve higher values and is narrowly tailored to serve that interest.' ") (quoting *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824). The trial court made no finding that the mere presence of these four women would instill fear in the witness, stating only that the witness had "apparently" communicated to the prosecutor such fear. Moreover, there was no finding that their exclusion from the courtroom would allay the fear, if any, that the witness was alleged to have.

Although the State in support of its position cites *Woods,* 977 F.2d at 77–78, its reliance on that case is unavailing. In *Woods,* the trial court found that actual threats had been made against the testifying witness, including one threat made by a member of the defendant's family. *Id.* at 74–75. The trial court also determined, after a short colloquy with the witness, that she was in fact experiencing a genuine fear for her safety. *Id.* at 75. On that record, we concluded that the trial court had "adequately assessed the scope of [the witness's] fear." *Id.* at 77. There was no such "adequate assessment" here.

■ In the pending case, the trial court's partial closure of its courtroom was not accomplished in conformity with constitutional requirements. The exclusion of courtroom observers, especially a defendant's family members and friends, even from part of a criminal trial, is not a step to be taken lightly. Moreover, it is well-settled that a defendant whose right to a public trial has been violated need not show that he suffered any prejudice, and the doctrine of harmless error does not apply. *See Waller,* 467 U.S. at 49–50 & n. 9, 104 S.Ct. at 2217 & n. 9; *Vidal,* 31 F.3d at 69; *Ip,* 710 F.Supp. at 919.

Accordingly, we reverse the judgment of the District Court and remand for the issu-

---

3. On appeal, the State refers to an "earlier disclosure" made to the trial court by the prosecutor to the effect that "one or more" witnesses had actually been threatened. *See* Appellee's Br. at 12. There was no assertion, however, that Cedeno was one of those witnesses, and the trial court made no findings to that effect.

ance of a writ of habeas corpus.[4]

[4] In view of our ruling on Guzman's Sixth
Amendment claim, we need not consider his
further claim that the omission of an alibi instruction, which was not requested, rendered the

jury charge constitutionally defective. Upon retrial, defense counsel can be expected to request
an alibi instruction, if it is warranted by the
evidence.