**Gerald ENGLISH, Petitioner–Appellee,**

v.

**Christopher ARTUZ, Superintendent Green Haven Correctional Facility, Respondent–Appellant.**

**Docket No. 98–2180.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 6, 1998.

Decided Dec. 29, 1998.

Emil Bricker, Assistant District Attorney, Queens County, (Richard A. Brown, District Attorney, John M. Castellano, Robin A. Forshaw, Assistant District Attorneys), Kew Gardens, NY, for Appellant.

Jeffrey A. Udell, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for Appellee.

Before: KEARSE, CARDAMONE and POOLER, Circuit Judges.

POOLER, Circuit Judge:

This appeal concerns the exclusion of petitioner's family members during the state criminal trial testimony of one witness in violation of his Sixth Amendment right to a public trial. On April 19, 1996,[1] Gerald English filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Supreme Court, Queens County for second degree murder under N.Y. Penal Law § 125.25 and second-degree criminal possession of a weapon, under N.Y. Penal Law § 265.03. Respondent Christopher Artuz, Superintendent of Green Haven Correctional Facility, appeals from the decision of the United States District Court for the Eastern District of New York (Nickerson, J.) granting English's petition. Because the state trial court improperly excluded English's family from the courtroom in violation of *Waller v. Georgia*, which was decided one year before petitioner's conviction, we affirm the judgment of the district court.

## BACKGROUND

In 1985, Gerald English was tried with co-defendants Daniel Staley and Ronnie Simpson in Queens County state court for the murder of Bernard Williams. Staley arranged for Williams' murder in retaliation for his participation in the theft of $100,000 and cocaine from one of Staley's "drug spots" during the summer of 1983. Staley gave English and Simpson a gun with which to murder Williams. Perry Bellamy, himself a participant in Staley's illegal drug operation, saw Staley hand over the gun to English and Simpson. Bellamy became the primary witness for the prosecution.

Prior to the testimony of Perry Bellamy, the prosecutor requested that the trial judge close the courtroom because Bellamy feared for his life. At the resulting closure hearing, Bellamy testified that he was afraid of Staley's family members because everyone except Bellamy who stole from Staley was either dead or incapacitated. However, on cross-examination, Bellamy admitted that he would be willing to testify if English's family members were in the courtroom.

At the conclusion of the hearing, counsel for English argued for a limited response rather than complete closure of the courtroom: "prohibit from entering the courtroom those people before whom Mr. Bellamy would not testify, and, that is Mr. Staley's relatives, and allow Mr. English's relatives,

---

1. English filed his petition on April 19, 1996, prior to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"). Therefore, the provisions of the AEDPA do not apply.

who are present and very much interested in what's going on in this proceeding, to be in the courtroom and watch the course of the trial." The prosecutor argued that, pursuant to New York law, it was within the trial judge's discretion to close the courtroom for the duration of Bellamy's testimony. When the court asked the prosecutor about the alternative of allowing English's family members to remain in the courtroom, he claimed, "We have no way of determining who those people are. . . . "

Without further discussion regarding English's request, the state court ruled that "based on the totality of the evidence and in particular the sworn testimony of the witness, Perry Bellamy, there is clear and convincing proof that there exists a manifest necessity for the Court to grant the People's application to order the closing of this courtroom during the testimony of the witness, Perry Bellamy, in the presence of the jury." Bellamy testified in a sealed courtroom, and the state trial jury convicted English of second-degree murder and second-degree criminal possession of a weapon. Judge Leahy sentenced English to concurrent terms of twenty-five years to life imprisonment on the murder charge and five to fifteen years imprisonment on the weapons charge. English exhausted his state remedies. The Supreme Court, Appellate Division, affirmed the convictions without opinion, *see People v. English*, 153 A.D.2d 575, 544 N.Y.S.2d 503 (2d Dep't 1989),[2] and the Court of Appeals denied English leave to appeal. *People v. English*, 75 N.Y.2d 770, 551 N.Y.S.2d 912, 551 N.E.2d 113 (1989).

On April 19, 1996, English filed a petition for writ of habeas corpus in the Eastern District of New York, claiming among other things that the exclusion of his family from the courtroom during Bellamy's testimony violated English's Sixth Amendment right to a public trial.[3] Judge Nickerson granted the writ of habeas corpus by amended order dated February 4, 1998. The district court held that the state trial court failed to comply with the requirements of *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) and thus violated English's Sixth Amendment right to a public trial. Judge Nickerson dismissed as "flimsy" the state's argument that it would be impossible to tell which people were members of English's family and which were cohorts of Staley. Respondent Artuz now appeals.

## DISCUSSION

### I. Retroactive application of new rules

■ We consider first whether a finding in favor of English would violate *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) by retroactively applying new rules to English's final state conviction. The state argues that those new rules are articulated in *Ayala v. Speckard*, 131 F.3d 62 (2d Cir.1997) (*in banc*), *cert. denied*, — U.S. —, 118 S.Ct. 2380, 141 L.Ed.2d 747 (1998), *Guzman v. Scully*, 80 F.3d 772 (2d Cir.1996), and *Vidal v. Williams*, 31 F.3d 67 (2d Cir.1994). In *Teague v. Lane*, the Supreme Court held that a new rule may not be applied retroactively on collateral review of a state conviction which has become final, absent exceptional circumstances.[4] *Teague*, 489 U.S. at 310, 109 S.Ct. 1060 (plurality opinion); *see also Penry v. Lynaugh*, 492 U.S. 302, 313–314, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). A rule is not new if precedent in effect at the time the defendant's conviction became final dictated the rule. *Teague*, 489 U.S. at 301, 109 S.Ct.

---

2. The court's order referred to a more complete discussion of the facts in *People v. Simpson*, 153 A.D.2d 596, 544 N.Y.S.2d 381 (2d Dep't 1989), which affirmed the conviction of co-defendant Ronnie Simpson.

3. English also argued that the state trial court curtailed defendant's cross-examination of Perry Bellamy in violation of English's Sixth Amendment right to confrontation of witnesses. The district court did not reach this issue.

4. The first exception is for new rules that decriminalize certain primary conduct and rules that prohibit categories of punishment for a class of defendants due to their status or offense. *O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 1973, 138 L.Ed.2d 351 (1997); *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The second exception applies to a very limited class of rules that require observance of procedures "implicit in the concept of ordered liberty." *O'Dell*, 117 S.Ct. at 1973 (quotations omitted).

1060. In short, a final state conviction or sentence will not be disturbed "unless it can be said that a state court, at the time the conviction or sentence became final, would have acted objectively unreasonably by not extending the relief later sought in federal court." *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 1973, 138 L.Ed.2d 351 (1997).

■ We conclude that it was objectively unreasonable for the state courts not to adhere to *Waller,* and no problem of retroactive application of new rules is present. We find that both English's appeal and the district court's decision rely primarily on *Waller* and *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) rather than Second Circuit precedents. We reject the state's suggestion that our decisions in *Ayala, Guzman* and *Vidal* were all "new" rules because they settled the issues of whether *Waller* itself created a new rule, applied *Waller* to new factual situations, or imposed a new procedural obligation on the states. We find that *Waller,* which was decided one year before English's conviction, squarely governs this case and that subsequent Second Circuit case law merely applied *Waller* without imposing new conditions. Therefore, no problem concerning retroactive application of new rules exists, and we proceed to the merits of English's claims.

## II. Courtroom closure

### A. Standards

■ We review a district court's ruling on a petition for a writ of habeas corpus *de novo. Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997); *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996). Petitioner must prove by a preponderance of the evidence that his constitutional rights were violated. *Jones,* 126 F.3d at 415; *Machado v. Commanding Officer, Plattsburgh Air Force Base,* 860 F.2d 542, 544 (2d Cir.1988).

■ A defendant in a criminal proceeding has the right to a public trial. U.S. Const. amend. VI; *Duncan v. Louisiana,* 391 U.S. 145, 148 & n. 10, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (right to public trial applies to states via the Fourteenth Amendment). However, this right is not absolute and some-times yields to other interests. *See Waller,* 467 U.S. at 45, 104 S.Ct. 2210; *Woods v. Kuhlmann,* 977 F.2d 74, 76 (2d Cir.1992). In order to close court proceedings over a defendant's objection, [1] a proponent of court closure "must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Waller,* 467 U.S. at 48, 104 S.Ct. 2210.

■ This court held *in banc* in *Ayala v. Speckard,* that "the more extensive is the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest." *Ayala,* 131 F.3d at 70. The jurisprudence of courtroom closure has been burdened by the use of the term "closure" to denote several different types of closure. The extent of the closure takes into consideration the duration of the closure and importance of the testimony rendered while the courtroom was closed, *see Brown v. Kuhlmann,* 142 F.3d 529, 538 (2d Cir.1998), as well as the relationship of those excluded to the complaining defendant, *see Vidal,* 31 F.3d at 69, and the public's right of access to the proceedings, *see Ayala,* 131 F.3d at 72.

■ "The exclusion of courtroom observers, especially a defendant's family members and friends, even from part of a criminal trial, is not a step to be taken lightly." *Guzman,* 80 F.3d at 776. In fact, "the Supreme Court has specifically noted a special concern for assuring the attendance of family members of the accused." *Vidal,* 31 F.3d at 69 (citing *Oliver,* 333 U.S. at 271–72 & n. 29, 68 S.Ct. 499). The unwarranted exclusion of a defendant's family members justifies granting habeas corpus relief, and petitioner need not show prejudice. *See Guzman,* 80 F.3d at 776. Nor does the doctrine of harmless error apply in such circumstances. *See id.*

### B. Application

■ The first prong of the *Waller* test is not at issue in this case. An overriding interest justifying courtroom closure is pres-

ent based on the state's claim that it needed to protect the safety of its witness, prevent the witness' intimidation during his testimony and secure the testimony of the only eyewitness to one of the crimes. *See Woods,* 977 F.2d at 77 (holding that temporary exclusion of defendant's family from courtroom during testimony of prosecution witness was justified where family members had threatened witness in past).

The state argues that the partial closure of the courtroom and removal of English's family did not violate the second prong of *Waller* because the action was no broader than necessary to protect Bellamy from an imminent threat of harm. We disagree, and find that the closure wrongly excluded English's family. The state's contention that no one would be able to tell which people were English's family members and which were Staley's cohorts is disingenuous. As Judge Nickerson observed, "[i]t would hardly have been an onerous task for court officers or the judge himself to have obtained identification from the relatives defense counsel had represented as being present."

Equally unconvincing is the state's argument that any measure short of closure would have jeopardized the safety of Perry Bellamy. In order to accept this argument, we would have to disregard the witness' unequivocal testimony at the closure hearing that he was not afraid of testifying before Gerald English's family. In fact, Bellamy said he did not even know English's family. We also dismiss the state's speculative assertion that members of English's family might have formed an "intimidation factor" during Bellamy's testimony. Here, the state relies upon generalized comments by the prosecutor that members of the courtroom audience appeared ready to intimidate Bellamy on the witness stand. Especially when the witness has stated that he does not fear the petitioner's family, the state's obligation to show an overriding interest cannot be met by a proffer of mere speculation.

Under the third prong of *Waller*, the trial court is required to consider reasonable alternatives to closing the courtroom. *Waller*, 467 U.S. at 48, 104 S.Ct. 2210. The state argues that the state trial court complied with this requirement because it considered and rejected English's suggested alternative to closure. Again, the state justifies the exclusion of English's family members with the unavailing argument that there was no way of determining spectators' affiliations and with the speculation that English's family members might have intimidated Bellamy even though he did not know them. We reject the state's attempt to substitute its hindsight conjecture for analysis that would have led the state trial judge to consider more carefully whether to allow English's family to remain in the courtroom. Especially relevant to that analysis would have been Bellamy's testimony that he had no reason to fear English's family, even though his was the only testimony that inculpated English.

The fourth prong of the *Waller* test safeguards a defendant's right to a public trial by insuring that adequate findings support the trial court's decision to close the courtroom. Broad and general findings are insufficient to meet this requirement. *See Waller*, 467 U.S. at 48, 104 S.Ct. 2210; *see also Guzman*, 80 F.3d at 776. Here, we find that the trial court's ruling failed to satisfy this requirement. The state contends that the trial court made adequate findings to support the closure decision because New York appellate courts could review that decision. We cannot agree. Granted, the state trial court asked the prosecutor about possibly allowing English's family members to remain in the courtroom. However, the trial judge failed to use the colloquy to arrive at meaningful findings adequate to justify the exclusion of English's family. Without commenting on defense counsel's request to allow English's family to remain, the trial court concluded that:

> based on the totality of the evidence and in particular the sworn testimony of the witness, Perry Bellamy, there is clear and convincing proof that there exists a manifest necessity for the Court to grant the People's application to order the closing of this courtroom during the testimony of the witness, Perry Bellamy, in the presence of the jury.

Therefore, we find that the trial judge's findings did not satisfy the fourth prong of *Wal-*

*ler* because, in light of Bellamy's statement that he would be willing to testify in the presence of English's family, the findings did not support the complete closure of the courtroom in preference to the proffered alternative.

We also reject the state's argument that the trial court's decision did not violate English's public trial rights because it comported with extant state law. Regardless of whether the trial court properly applied state law as it existed at the time, it was nevertheless obligated to afford English the protections of the *Waller* analysis. The state's attempt to distance itself from *Waller* on the grounds that this is a safety case, not a privacy case, pales in light of directly applicable Supreme Court precedent.

### CONCLUSION

We have considered the respondent's remaining contentions and find them to be without merit. For the foregoing reasons, we affirm the decision of the district court granting Gerald English's petition for a writ of habeas corpus and ordering a new trial.